Good morning, your honors. May it please the court, Devin Burstein, Federal Defenders for Mr. Jimenez. Your honors, based on his timely, unconditional guilty plea, Mr. Jimenez merited the full three-level acceptance of responsibility reduction under section 3E1.1b of the guidelines. And this court's precedent does not hold to the contrary, and I'd like to... What about Medina Beltran? Well, beginning with Medina Beltran, your honor, the facts are unknown from the short procurium opinion. In particular, your honor, what's unknown is whether the plea was conditional or unconditional. It's unknown whether the defendant provided timely notice to the government such that it would be able to avoid preparing for trial, which is really the heart of 3E1.1. And, Judge Bey, in the course of preparing for argument, I wound up listening to the argument last night in Medina Beltran, and it appeared evident to me right away that it really was not a case of an unconditional guilty plea. So what I did was, thanks to the miracle of the Internet, I pulled up the actual government's brief from Medina Beltran off of Westlaw and learned that, in fact, Mr. Medina Beltran did not plead guilty unconditionally the same way that Mr. Jimenez did. And if your honor is curious, it's 2006, Westlaw, 3879040. That's the U.S. Attorney's brief. And so that case is really not on point. In Medina Beltran, the defendant wouldn't admit to the full charge of the indictment. He wouldn't admit to what we colloquially refer to as the 1326B part, the deported subsequent to date, which is essentially everything in the 1326 plea because it changes the statutory maximum, as your honor is aware, from 2 years to 20 years. And what it shows is that, unlike Mr. Jimenez, Mr. Medina Beltran didn't plead guilty in a way that ensured his just punishment. And that's the phrase that, of course, 3E1.1B in the background commentary, it uses. The key, according to the commentary, which is binding on this Court's interpretation of it, is that the defendant must plead guilty in a way that ensures his just punishment. And that's what allows him or her to merit the full three-level reduction. And that's exactly what we have here. We have a defendant, Mr. Jimenez, who pled guilty right away. In fact, he tried to plead guilty one time and the government wouldn't even let him. But that aside, he pled guilty, unconditionally filed no substantive motions, readily admitted his guilt from the very first moment. Even the probation report says that Mr. Jimenez, and the word they use is clearly, clearly accepted responsibility. So in this case, as opposed to Medina Beltran, we have a situation where the defendant did everything essentially he could to accept responsibility. And the government, candidly, I would add, simply takes the position, well, he wouldn't waive his right to appeal. Well, that is true. He wouldn't waive his right to appeal his sentence. But by an unconditional guilty plea, that limits what the appeal could possibly be to very few things. One of them you can't get out of even with an appeal waiver, such as a ---- Can I parse those three different things? Published, precedential. Can you say yes or no first? Excuse me? Can you say yes or no first? Yes. It is a published precedential case that is binding on this Court, but it doesn't apply to this case. That's what I was trying to get to. It doesn't apply because in Medina Beltran, he didn't plead to the sheet. He pled conditionally. Essentially. Correct. Okay. It's not a true conditional guilty plea in some senses, but he didn't plead to the indictment. So it was not an unconditional guilty plea. And the distinction there is only that the government generally has to agree in a conditional guilty plea, and this wasn't. And in fact, Your Honor, brings up another good point. How did that affect the government's preparation for trial or other proceedings? I was just getting there, Your Honor, because I had forgot this point and you reminded me of it. What happened was, and you see from the docket in Medina Beltran, they wind up getting into litigation. Before the guilty plea is accepted, the guy goes into a forum and pleads guilty. And then the government gets upset, understandably, that he's not pleading to the full indictment. And then they litigate back and forth whether or not the district court is obligated to accept the guilty plea. So there was several rounds of litigation that are reflected on the docket sheet. There was an initial brief saying you have to accept it, the government taking a position, and then a response to the government. And certainly that's not present here. This is, I believe, an open area in 3E1.1b, this Court's jurisprudence. And I think looking specifically at the plain language, along with the background commentary, we see that Mr. Jimenez is somebody who has fully accepted responsibility in the way that is specifically contemplated by the guidelines. I think I had your point on attempting to distinguish Medina Beltran. Tell me how you distinguish United States v. Johnson. Well, that's a much easier case for me to distinguish, I believe, Your Honor, because that was a specific conditional guilty plea, in the sense he preserved his right to appeal the denial of the suppression motion. And the point that Johnson makes is that had he been successful, the federal charge would have evaporated. In other words, he would not have been guilty. You cannot accept responsibility totally and plead guilty, while at the same time maintaining that you're really not guilty. And that's why Judge Smith wrote only a partial dissent. And in partial concurrence, he said, I disagree with the way you've looked at the guideline, but I agree with the premise that somebody cannot conditionally plead guilty while essentially maintaining their innocence before this Court and accept full and then be meriting or require the government to give you the full third level. So that would be the really distinguishing factor of Johnson. Mr. Bernstein, let me ask you. I was on the district court when the Protect Act came along, which is the source of this guideline. Didn't the effect of the guideline promulgation, didn't it change the decider, if you will, of the extra point from the court, the judicial branch, to the executive branch? Because now we have the government arguing by analogy, this is the same as the government's failure to move for a departure, you've got to have an unconstitutional motive or some other legitimate governmental interest that's frustrated. So what's your answer to, well, this is the executive branch's decision to give or not to give the extra point per acceptance? The answer is yes. That's exactly what the Protect Act did. But it didn't change the substantive basis for granting the motion. That part of the Protect Act, that part of the language in 3E1.1b stayed the same, that the defendant essentially, as explained in the background commentary, merits the third point by accepting responsibility in a way that allows the government to avoid trial preparation. And I think the Court in Divens put it best. It's the preparing for trial and permitting the government and the Court to allocate their resources efficiently. Exactly. You tie that to trial, not to anything else. Well, I think there's two parts. The primary concern is trial preparation. But efficient so they have to avoid any resources for trial preparation. And then other resources just have to be efficiently allocated. And it's our position that coming to this Court to ensure that a sentence is just is the very heart of efficient allocation. We don't take the position at Federal Defenders that coming before you is somehow an inefficient allocation of resources. We believe firmly that it is this Court's, it is the existence of this Court and the appellate process that ensures that a sentence imposed is in fact just. It is the core of the protection of the just sentence. So that's why it would not, it's not an efficient allocation of resources to avoid any potential sentencing appeal. I'm sorry. You're trying to draw a distinction between trial, efficient allocation of resources and appellate. I don't get your point. I'm sorry, Your Honor. Maybe I can explain it a little bit better. What I'm trying to say is the guideline says that the defendant has to plead guilty to allow the government to avoid preparing for trial. And then the efficient allocation, there's a difference between any allocation of resources and efficient allocation. So I'm trying to emphasize the word efficient. And you think that the efficient allocation of resources are allowing personal appeal? A limited sentencing appeal? Indeed, Your Honor. The government's primary objective, its interest is not securing a win. It's not a corporation. Its job is to get justice. You say it's sending for trial. All right. I think I get your point. Thank you, Your Honor. But, you know, what your client did was extremely unusual. He just came in there and pled guilty without trying to make any kind of a deal or negotiate a sentence. Here I am. I plead guilty. And the guideline itself talks about trial. It doesn't talk about appeal. And, you know, I'm not crazy about this efficiency business either. I can see lots of ways that courts can become more efficient. Right. But efficiency includes the concept of what's just and what's fair. That's right, Your Honor. So let's hear from the government. Mr. Bernstein, can I ask you a question? Yes, Judge. Mr. Bernstein, you wrote an excellent brief, but could you put your argument any better than Judge Motz did in the Fourth Circuit in Divens? Absolutely not. Okay. Impossible. One last thing. She makes reference to the point that the commission, sentencing commission could have used the word courts and not court when they're talking about acceptance. That's right. It could be just the ‑‑ if they wanted courts to include the appellate circuit courts, they certainly could have said so. Thank you, Judge Breyer. Can I ask you something? Certainly, Your Honor. You see, what bothers me about a lot of this is that, first of all, we have this rule of lenity. If there's a problem with interpretation, then under the rule of lenity, the scale tips on the side of the defendant. And then, to me, the right to appeal is a fundamental right. You didn't give that up. And there's nothing in the guideline that says anything about giving up your right to appeal. Nothing there. And so why shouldn't we construe that guideline as being limited to going to trial? You know, the government has got so many weapons in which to extract guilty pleas. And here you have a person who just gets up there and says, I'm guilty, I plead guilty. And when this came up, I don't know if anyone thought about waiving the right to appeal. Was there any conversation about that? You know, he was disappointed. The first time around, what was the recommendation? Ten months? Your Honor, if I may, I'll try to answer your question. It was ten months. Well, that was the PSR's recommendation. Well, that was the recommendation. But that was one thing the Court should keep in mind is that behind all of this is a dispute about a plus four or plus eight for essentially a felon in possession state charge that this defendant had. The government's position all along was that it was a plus eight under the guidelines. The defense did not agree with that, and they wanted to take it to this Court to resolve that issue. Now, that turned out to be a bad gamble because it was conclusively resolved against the defendant during the course of these proceedings by a case called Gill v. Holder in the Ninth Circuit. So what I'm saying is the defense was offered a plea deal that included three levels for acceptance of responsibility, included two levels for fast track, and would have gotten the defendant a guideline range of 18 to 24 months below what the district court, in essence, sentenced this defendant to. Well, I know that the district court sentenced him below the guidelines. Right to 20 months. Yeah. What I'm suggesting to the Court is... All I'm really thinking about is the right to appeal. Right. So he's not satisfied with the sentence he got. He thought he'd get whatever it was, 15 months. He got 20 months. And so he cooperated fully, didn't he? Well, he admitted his guilt to the particular offense. What he didn't admit, and what he disputed and litigated in the district court, and had to give up because of a prior case from the circuit, what he litigated was this issue of the plus-4, plus-8 level of the guidelines. Yes. And so what I'm suggesting to the Court is that, and it's been held by this Court and Johnson and Espinoza-Cano, that it's perfectly okay to incentivize defendants to waive their right to appeal, and for the government, as lawyers, to try to have that happen. And, if you think about it, from this defendant's point of view... Why is that so important to the government? Well, Your Honor... You know, if I had heard a lawyer tell me this 40 years ago, I'd have thought they were crazy. I mean, the right to appeal is a fundamental right. And now we've got these guidelines that just take all that and throw it out the window. Your Honor, no one suggested... Why isn't that a fundamental right? And when you take it away from someone, you're violating that person's constitutional rights. Well, first of all, I'd suggest that the end of Johnson talks about this. That is, this guideline provision may put a defendant in a dilemma. They can roll the dice on appeal, or they cannot. They can choose to go to an appellate waiver. But when they make that... Let me ask you a question. What percentage of cases... I know you're down in San Diego, where they've got vigorous defense counsel. But what percentage of your cases result in convictions? I'm not sure. I'm sure it's very high. It's very high. Some months, it's 100%. So, I don't know why that's so necessary. And then you don't get any trial experience either. A lot of U.S. attorneys are complaining. You know, we only get tried maybe one or two cases a year. And that's true. What I would just suggest to the court is that... I'm not trying to give you a hard time. I just want to awaken your conscience. I understand. I'm not suggesting the defendant has to give up his right to appeal. I mean, they have that option. What I am suggesting is that once they choose to exercise that option... They've got to pay for it. Well, they don't get to then afterwards say, well, we want a different payoff matrix. But what about his argument? What about Mr. Bernstein's argument that that's the heart of what just punishment is part of 3553A? And it's that guy's argument, having an appellate review is part of my just punishment. Is that what he's saying? One thing I'd suggest to the court is it's a little overstated to say that an appellate waiver would mean that you basically gave up all your rights to appeal. We know that there are certain things that can't be waived. And besides with an agreement, usually there's a guidelines sort of a bracket, where if it goes above that, they get the right to appeal. So there are all kinds of issues that are still appealable. It's just that if it happens to turn out a certain way, the government has the certainty that there won't be an appeal. And that's something that's worth pursuing. As happy as I am to see, Your Honor, Judge Bragerson, it would be just as well for me to go back to San Diego and work on another case. And that's what this Court has expressly held twice in Medina, Beltran and Johnson, that it's not just trial preparation. The language, the particular provision of the issue has been construed, this is Johnson in 1002, conserving government resources means more than simply trial preparation. We're not writing on a clean slate here. It might be if we were sitting in a different circuit that hadn't decided the issue already, that we'd be persuaded by Judge Mott, but we're not. How much has your office saved with the guidelines in effect? I'm sorry? How much money has your office saved? Your Honor, I don't know the answer to that. I'm sure President Obama would prefer that we spend less money rather than more in these times. Not coming up here would be one way. I haven't talked to him about that recently. I thought it would be a stimulus. Anyway. Your Honor, I understand that Mr. Burstein has tried to make some arguments that Medina Beltran is distinguishable from this case and Johnson. I suggest not. I suggest Johnson. It says specifically the issue is whether the allocation, expenditure, prosecutor resources for the purposes of defending an appeal is a rational basis for refusing to move. We hold that it is. That's appeal, not trial preparation. They specifically say in a footnote it would make no difference if it were just about sentencing. Similarly, in Medina Beltran, refused to agree to a sentencing enhancement, refused to give up a right to appeal. We hold that that's a legitimate basis to refuse. What about his argument that he made here today that your brief in Medina Beltran makes it clear that that was a conditional or unconditional plea? Well, I quarrel with counsel's characterization of that. I have the brief right here. It says the defendant pleaded guilty without a plea agreement. That's exactly what happened here. Now, it's a little unclear, and I think Mr. Burstein may be right, that the issue was what happened in Medina Beltran was it came out right after Booker, I believe, or Apprendi. It was an issue about what was in the indictment in order to get the 20-year statutory maximum. And so there was some confusion and litigation about that. But other than that, it's really about the – it's the same in the sense it's about a sentencing enhancement. So calling it conditional or unconditional, I don't know that that helps advance the ball. It was the defendant pleaded guilty without a plea agreement. I think what he wouldn't do is say I was deported after such and such a date, which is kind of the issue. What if he found the counsel learned that the government withheld grading material? I don't know that that's – That happens all the time, doesn't it? Well, I don't know that I would agree with – The Supreme Court's been talking about it a lot lately. I don't know the answer to that, Your Honor. I'm not sure that the defense can waive a constitutional claim like that. I'm not sure. I don't know the answer. I'd have to research it. I just don't know. Do you agree with my learned friend that the right to appeal is a fundamental constitutional right? Wholeheartedly. But that doesn't mean that the guidelines can't structure things in a way that incentivizes people to waive their right to appeal for the efficient allocation of resources. And that's – Again, I point the court to the end of the case in Johnson where Mitch Holman talks expressly about that. Mr. Hoffman, I know the law in my circuit about waiver of appeal, but I don't know the law in the Ninth Circuit, obviously. What is the law on waiver of appeal? We have an in-bank decision in my circuit called Andis that says you can waive your right to appeal, but it's still subject to review if there's a, quote, substantial injustice, which still means to me that you can have it reviewed in certain circumstances. What is the law in the Ninth Circuit? I'm sorry. I don't – I haven't researched it because it hasn't come up in a case. I do know that ordinarily, you know, there's a guideline provision, and if it's in that guideline provision, it has to be some other thing that's going on that would cause an appeal. I know we try to enforce appellate waivers a lot, and it doesn't often work. If we were writing on a clean slate and didn't have Medina or Johnson, what's your answer to Judge Motz's, Diven's opinion, that it only means trial and not appeal? Right. I would point the court to the discussion in Johnson where they say that that would basically negate the amendment, that there was specific – it would convert what is now a power into a duty, which was the whole point of changing the language. And in Johnson, they point to the second part of the phrase, to thereby enabling the government to preserve resources. They focus on that language. Do you agree that having good, diligent defense counsel produces good, diligent prosecutors? It keeps everybody on their toes, Your Honor. Well, it's good for you. I agree with that. But I would suggest that the district court was exactly right here. The government was within its rights under Ninth Circuit law to withhold moving to the third point. Unless there were other questions. Four quick points. Mr. Hoffman paints this dispute as somehow akin to my client, Mr. Jimenez, having a big fight with the government. But I'd like to point out that the pre-sentence report is the one that initially recommended the plus four, not the plus eight. So that's one point. Second point in terms of appellate waivers, the problem with an appellate waiver in general in this context is it could certainly even prevent you, as in this court, from reviewing what would otherwise be deemed an illegal or procedurally unreasonable sentence. The third point is about Johnson, and I think it's important to note that Johnson itself states, we decide the appeal now before us, not all hypothetical reasons the government could give for refusing to file the requisite motion. That's at footnote eight. So Johnson itself limits itself to the facts of that case. Finally, in terms of Medina Beltran, just so there's no questions, I'll just read from the government's brief. Mr. is referring to the defendant. He did not admit to the enhancement portion of the indictment, leaving the government to its proof that the defendant was an aggravated felon and thereby subject to the sentencing enhancement provisions under 1326B, which is what she is. Mr. Bernstein, you didn't read all of Johnson. When 3E1.1B speaks of conserving governmental resources in the prosecution of the defendant's misconduct, it means more than simply trial preparation. Prosecution is commonly understood to encompass the entirety of the criminal proceedings in a particular case until judgment is final and certain. In this circuit, we have a rule that well-considered dicta is still precedential and must be followed by a three-judge panel. How do we distinguish that? Well, Your Honor, if I could just have a moment to respond to that. I think recently, the most recent statement and precedential binding statement from this Court on the doctrine of stare decisis came from Yepez. The Court said, the doctrine of stare decisis concerns the whole incident. We're not talking about stare decisis. We're talking about law of the circuit. Well, this is in terms of what is binding on this Court. It gets specifically to that point. I would point to Yepez and Penular. Penular, or I can begin with Yepez, and it says, doctrine of stare decisis concerns the holdings of previous cases, not the rationales. Insofar as precedent is concerned, stare decisis is important only for the decision, for the detailed legal consequence following a detailed set of facts. That's Yepez at 1195. Was Yepez an in-bank case? It wasn't. Then it's inconsistent with our long-held, well-reasoned dicta rulings, which are in-bank cases. So thank you for your commentary, and I'll take it into consideration, but I don't know that we can do much with it. That's just a quote. That wasn't my commentary, Your Honor. And it just follows closely on Penular, which says, legal rulings and prior opinions are applicable to future cases only to the degree one can ascertain from the opinion itself the reach of the ruling. Where the underlying facts do not appear, later courts are bound by any rule of law explicitly announced, but not by the application of law to unstated factual circumstances. So I would submit that there is room here, Your Honor, within Medina and Johnson to find for Mr. Jimenez and thereby fulfill the plain language of 3E1.1b. Thank you for your time. How much more time does he have to serve? His release date, he, as a result of this, it's he could be sentenced to several months less if the judge did the same downward variance based on the revised guideline calculation. Is he in custody now? Yes. And so you've got 20 months. Correct. So how long has he been in prison? I don't want to double check his release date so I don't give you the wrong information. His projected release date is May of this year, May 19th. So were you to rule he could be resentenced and hopefully get some type of time-served sentence, that would be the goal. All right. Thank you very much. Thank you, Your Honor. The case was very well-argued. All right. Now we come to the next matter, William A. McIntyre versus BNC Mortgage.
judges: Pratt, Pregerson, Bea